The next case today is Cleaver-Patricio Siguensia-Camas v. Merrick B. Garland, appeal number 21-1835. Attorney Grotus, please introduce yourself for the record and proceed with your argument. Good afternoon, your honors. My name is Paul Grotus, G-R-O-T-A-S. I'm here for the petitioner appellant, Mr. Siguensia-Camas. My co-counsel, Attorney Balakrishnan, will be arguing the jurisdictional part of the argument. I would like to reserve two minutes for rebuttal and additionally two minutes for Attorney Balakrishnan to address any jurisdictional arguments. That's fine. So the reasonable fear interview process is designed as a screening mechanism to ensure that non-citizens who can demonstrate a reasonable possibility, quote-unquote, of persecution have an opportunity to apply for withholding of removal before an immigration judge. In this case, the petitioner, Mr. Siguensia-Camas, easily satisfied that standard by presenting credible testimony that he faces serious danger in Ecuador because of his familiar relationship to his cousin, which under clearly established law constitutes a particular social group justifying withholding of removal. The agency erroneously denied his claim following procedures that were marred by pervasive due process and serious legal error. Because I think the panel is pretty familiar with the case, setting aside the due process issue, just on the substantial evidence, assuming substantial evidence is the right standard of review, for the finding that there was not the requisite showing of nexus at this stage of the proceeding, what's the argument about why that's wrong and how does that relate to the fact that at this stage of the case we're only interested in whether there was a reasonable possibility as opposed to a more likely than not finding? Of course, putting aside this court's decision in Shulamavara Reholder that an agency's decision must be set forth with such clarity as to be understandable, putting all of that aside and focusing solely on the claim. I'm going to apologize to the court, but I have a hard time doing that. The immigration judge asked my client whether he had or what was the reason for his afraid to go home. This is the single most important question in the transcript and there's no discernible answer. Do you have a chance to put a proffer in in your appeal to us? Can you go for a motion for reconsideration to the IJ where you would say what would have been evidence? There's nothing in the interview itself that suggests that the answer would be anything other than what we see on the record. There's nothing that was mentioned in the interview that wasn't mentioned in the presentation before the IJ. Good question, your honor. Once the immigration judge issues this decision, zero filings in any shape, can be made with the immigration court or with the board of immigration appeals. Then that still leaves the problem though, isn't that because the IJ is supposed to rely on the record, solely the record, that was formulated with the interview? Well, that goes to an underlying fundamental problem with the interview. This standard is a streamlined procedure where immigrants are supposed to be... How about this? It would be helpful to me if you would address the question I asked. Of course. Could you just tell me, assuming that it mattered to the case whether there was substantial evidence to support the no nexus finding, in light of the fact that at this stage your client doesn't have to show it's more likely than not that there's a nexus and only has to show that there's a nexus. I'm going to cite to this court's decision in Aldana Ramos v. Holder in 2014. The law in this circuit and others is clear that a family may be a particular social group simply by virtue of its kinship ties without requiring any more quote unquote period. In addition, Gerber Michael, G-E-B-R-E-M-I-C-H-A-L-V-I-N-S, we recently stated that a prototypical example of a particular social group would consist of the immediate members of a certain family. That's the legal point. Now I just want to get to the record. Maybe I'll help you with getting to where I would like you to address. Sure. In the interview, your client said he had a cousin and the cousin was told by the same gang members or the same gang that subsequently attacked him that that gang told the cousin that he was going to kill the whole family of the cousin if they didn't cooperate. And to me, that's what you seem to emphasize in your brief as the basis for saying given that piece of evidence in the record, how can one say there's not at least a reasonable possibility that in a full hearing he could show that there was evidence of a nexus? Am I understanding that's your argument? There is another argument additionally, your honor. So in addition to the argument, which your honor eloquently stated, there's a convention against torture claim, which is related to persecution by a government actor. And the respondent states it clearly in his interview before the immigration officer. But then when it gets to the immigration judge, it's not discussed at all. And I think that this, even if the court says that the 18 times where the transcript didn't dictate what my client said is of no consequence. The cat claim, which is the convention against torture claim, is totally unaddressed by the immigration judge. He in no way asks the respondent about his interaction with the police, about the Ecuadorian police, which is extremely important because the asylum interview occurred four years prior to the immigration court interview. If if I'm just going back to the nexus questioning, do you have any case law that would help us decide what kind of evidence there has to be, or what the record has to look like to support a determination that there's no reasonable possibility? I noticed the government's briefing cites to us a case which is applying the more likely than not standard. It doesn't seem to cite any cases applying the reasonable possibility standard. Do you know of any authority that would help us figure out how we decide when there's enough for a reasonable possibility, even if there wouldn't be enough for more likely than not? I would point to the USCIS training documents. They define reasonable possibility standard as lower than the more likely than not standard required to establish eligibility for withholding removal, but higher than the standard of proof required to establish a credible fear of persecution. Do you know of any case law that applies that standard to a record, or have we ever done it in a way that would give insight into whether what was shown here is enough to get past the bar, or whether it's not? I think the only case that I currently have, but I can review with my law clerk and provide the court with an additional follow-up letter, is Shul-Navarro v. Holder. Does this court state that an agency decision must be settled? That's time. Do you and my colleagues have any questions? I think counsel was finishing a statement. I think so. The only authority that I currently have, and I can review with my law clerk and update the court, is Shul-Navarro v. Holder. This court has stated that an agency decision must be set forth with clarity as to be understandable, but that doesn't directly address the court's question regarding the evidentiary standard and what evidence is required to meet that standard. That's correct. It doesn't. Thank you. Thank you, Attorney Grotus. At this time, could you please mute your audio and video, and would Attorney Balakrishnan please introduce himself on the record to begin? Please go ahead and unmute yourself. Good afternoon, Your Honors. Anand Balakrishnan for Petitioner Appellant. I entered, we entered an appearance in this case, in order to address, at the court's discretion, the jurisdictional claims that the government first suggested in its appellees brief, and recently in yesterday's 28-8J filing, states should leave this court to dismiss this case for want of jurisdiction. I'm happy to address any questions that the court has at this time, or to make a short oral presentation, but I suggest that if the court is inclined to address the jurisdictional question that the government has raised in this case, that the court order supplemental briefing on the issue, because it is an extremely significant issue, not just for this instant case, but also for countless other non-citizens. Counsel, if we were to decide under the substantial evidence test that, assuming we had jurisdiction, that he has not met his burden of showing reasonable possibility under the substantial evidence test, I believe we don't have to reach the jurisdictional question because I understand it to be a statutory, as opposed to an article three question. Is that correct? Your Honor, that's correct. And this court has previously, when a petitioner has lost on the merits, assumed jurisdiction for that reason. Thank you. And if there are no other specific questions, I just reiterate my request for a supplemental briefing should the issue be central to the court's decision, and we'd be happy to file something in the form of a brief. Thank you, and I'll pass my time on to the rebuttal. Thank you. At this time, thank you, Attorney Balakrishnan. At this time, would Attorney George please unmute his audio and video and introduce himself on the record to begin. May it please the court, Matthew George for the Attorney General. The court left jurisdiction in this case because Seguencia did not file a timely petition for review of a final order of removal. The court has jurisdiction to review only final orders of removal.  Decisions regarding withholding of removal under the Immigration and Nationality Act and the regulations implementing the Convention Against Torture are distinct and separate from removal orders and do not affect the finality of a removal order. The court has also recently held that withholding-only proceedings do not affect the finality of a reinstated order. Therefore, the immigration judges, September 21st... That was not in the context of the 30-day deadline provision, correct? Which part of it, Your Honor, is not in the context? The last part that you just mentioned, where you said the Supreme Court has recently held that the withholding doesn't affect the finality of the reinstated removal order. They were not interpreting the 30-day deadline. They were not interpreting the petition for review deadline, no. They were interpreting the criminal bar and... My understanding is DOJ's own information, it supplies to litigants, takes the opposite position. Well, that is true. Certainly before Nasrallah and before Guzman-Chavez, our position was the court would have jurisdiction in this case. That was at the time this person filed? Yes. So your position is that DOJ can advise you that you should file when this person filed, but now tell the person, sorry, too late? Well, I'm not sure what advice the court is referring to precisely. However, I can say that the Supreme Court has said jurisdictional issues don't turn on or the court can't exercise equity to create jurisdiction or cure jurisdictional issues. So there is an issue regarding that of, yes, maybe someone... Counsel, what we're talking about is that the IJ's 2021 order on a DOJ form expressly stated that the withholding decision is appealable within 30 days and says the IJ's withholding decision is a final order and that he can file a petition for review within 30 days. So regardless of the general rule, there's a more complicated issue here as to jurisdiction. You just heard me say, we may not have to ever address this if in fact we were to find that under the substantial evidence standard, we cannot say that no reasonable adjudicator could have reached the conclusion that the immigration judge reached here. So could you talk about the merits, please? Yes, Your Honor, and I'm not in any way waiving or ignoring that. No, of course not. I'm going to address Your Honor's points. The issue here is, I think the Telus case points out best, the standard of review is whether substantial evidence supports the immigration judge's concurrence with the asylum officer's is about nexus. It's not whether family is a social group. That essentially is an implicit finding that the agency has made. That's not really the issue. It's whether he's shown a connection to a protected ground. Isn't it really whether he's shown a reasonable possibility of making that showing? That is the standard that the asylum officer is applying. Now what the court is reviewing is what the immigration judge did. Isn't that what the immigration judge is supposed to decide at this stage? The immigration judge is looking at that and is looking at it de novo. However, the court is reviewing the immigration judge's decision, the immigration judge's concurrence to see if substantial evidence supported the concurrence. The concurrence has to be that what the IJ has to be finding in not permitting the case to proceed is that there is no reasonable possibility of showing nexus. And even if we're looking at even that a reasonable possibility standard, it's not met here. Because Petitioner himself said the reasons that the gang were after him, that the gang never mentioned family. The gang never even really identified themselves. Each time they were masked. And then Petitioner himself said it was about money. It was about because he had a job. It was about the gang wanted use of his parents. It bothers me that he also said that his cousin had told him that this same gang had said they were going to go after that cousin's family because they were his family. I apologize. Yes, so he's testified that his cousin said that the gang asked him about that family connection and supposedly the gang said, I'm going to go after your whole family. First of all, that was three months before the gang started coming after Petitioner. We have to make an inferential leap. But you only have to have a reasonable possibility here. That's why I just don't see how it's not more likely than not. How is it not a reasonable possibility that that's what the right inference to draw is? But is it reasonable to make this inferential connection that it's either the same gang members or that the gang members shared that information and that they were motivated by that? That they both knew about the family connection and acted on it? Is there a 20% chance of that being true? Is that the number? I don't know that there's a calculation what the number is. It can't be 51% because your own pride says that it's not more likely than not. How much of a possibility does it have to be? It's a reasonable one. One that a reasonable fact finder would be, in this case, compelled to make if we're going to apply a substantial evidence type of review. We're talking about this is getting to be the only conclusion that it's whatever 20% if that's what the court thinks it needs to be. How likely does it have to be since it doesn't have to be more likely than not? I can't provide. It has to be a reasonable possibility. I mean, I can't provide more than that. I don't think there are any cases that they get into that. And the agency certainly hasn't gotten into that. We're just looking at what do these words mean? Reasonable. Reasonable possibility. What does that mean? Right. A reasonable possibility. It's not just a possibility. It's a reasonable one. So if we're talking about reasonable, we're talking about an objective one. We're talking about something that is going to be at least somewhat convincing. It's not just possible. Okay, that's not just a possibility. You don't think it's somewhat convincing that he says credibly, according to what the record shows, that his cousin was told by the gang that they were going to come after his whole family. And then they go after other family members. And then the first time he confronts the gang, they're going after him. And it's within a few months of when the cousin was told that. There's not a somewhat possible that the reason that that's happening is because they're part of the family, just like the gang said. Not when he says it's about money. It's about my parents' house. It's about recruitment. It's about revenge for. But the question, I guess, for me is, it's why did they select him? Obviously, they're going after him for the money when they go after him. But the question is, why was he selected? And his claim is, based on what his cousin was told, they selected him because of his family staff. He also said the gang knew that he had a job and had money. And so that's why they went after him. They also knew about this house. That was the very first thing they were interested in. They wanted this house for gang activities. And so that's what they were going after him for. And when he refused, they continued to go after him. And then he said revenge became the motivation. I mean, this is not about. I mean, maybe I don't know what the initial connection is. I think it's very tenuous to say, based on something that a cousin said three months prior, now we have a reasonable possibility that there's a connection in terms of information and knowledge about this connection. And it's motivating them. It's not the money. It's not the house. It's not recruitment. These are the things he himself said were the motivation for these attacks. And we also don't know who these gang members are. The same ones or even the same gang. These are masked individuals every time. I thought he testified it was the same gang. And that was deemed credible. We don't know that they're masked individuals, even if it's the same gang. How do we know it's the same people? How do we know they have any idea what the cousin said to or said to these other gang members? I mean, that's what we're getting into. I mean, is it reasonable to draw? I mean, it's possible, certainly a factor to draw these conclusions. But is that reasonable? No, Mr. George. The question is not whether it's reasonable under the substantial evidence test. The question for us is, could a reasonable adjudicator have reached the conclusion which both the immigration judge and the asylum officer reached? It is not an independent determination. I agree. There's deference to the agency here. I mean, the Supreme Court recently reaffirmed that in Ming Dai of saying that the court accepts what the agency has found unless there's a reason not to, unless there's a compelling reason not to. And so we are starting from what the agency has found. I just, has this case been through the settlement program? No, Your Honor. Okay. And just so I understand, his, the reinstatement was how long ago? Eight years ago? The reinstated order? The reinstatement was in 2014, I believe. Yes. And petitioner has, what, two citizen children? Am I right? I'm not sure how many children he has, Your Honor. I don't have that in front of me. I know he's been here for a while before, and then he's been here at least since 2014. That's all I know. And the record shows, I thought, the record shows he has one DWI. Is that this, was that the?  You broke up there on my end, Your Honor. Could you repeat that question? I'm trying to figure out, the petitioner here has a criminal record of one DWI, is that right? That I'm not sure. I have not looked into his criminal background. If it's in the record, then I suppose it is. Did the government have any view about whether that you would be open to exploring the mediation settlement process? I suppose, you know, we could certainly look at it. I would have to ask DHS what their position would be. My guess would be, given that this is a reinstatement, they tend not to look kindly on people who repeatedly violate the immigration laws. So I wouldn't have high hopes. But if that's something the court wants us to explore, I'm certainly open to taking that to DHS and getting their position. Mr. George, the question doesn't come out of the blue. In fact, the Justice Department has been working with our Settlement Council and they came in and suggested that they would be happy to cooperate with the immigration bar and that certain cases probably could be mediated. It doesn't mean the mediation is going to be successful. We'll see a lot more of these cases, you know, in the First Circuit. So we have this background that possibly you know nothing about. So just to tell you, this isn't coming out of the blue. Okay? I understand that. You know, I've worked at this office for, I think, 12 or 13 years. I've handled hundreds, if not thousands of cases. You know, courts all over the country. So I'm never... Whatever needs to be done. I mean, I'm always willing to listen. I can't promise that we can reach an agreement or anything like that. Okay. Thank you very much. You're welcome. Just to sum up, I think the court should deny the petition. Thank you. Thank you. At this time, Attorney George, please go ahead and mute your camera and your audio. And I believe we have a two-minute rebuttal from Attorney Grotas. Please go ahead and reintroduce yourself on the record to begin. I'm Paul Grotas, G-R-O-T-A-S. I would just like to highlight one quick main point. My opposing counsel's difficulty in bringing up hypothetical situations which would prevent my client from meeting his burden of proof really proves the prejudice aspect of my claim. A lot of the questions that the court posed to opposing counsel about what the appellant would need to do to meet his burden of proof should have been asked by the immigration court. I mean, I think it's unfair for this appellate body to be forced to go on a fact-finding mission because of the paucity of the lower court's record. Mr. Grotas, please. We are bound as well by case law, by statute. We have to apply the substantial evidence standard or a standard less favorable to you. So, please. Your Honor, I didn't mean any disrespect. I've been a practicing immigration lawyer for 12 years and I've seen these sorts of transcripts regularly get remanded by the Board of Immigration Appeals to the Immigration Court for a new hearing. It's an unfortunate common practice in the Immigration Court or a common mistake that the audio and transcription services don't always work so well. And this court's... Okay, you're back to your procedural arguments. Do you have something else you'd like to say? No, Your Honor. Do you have a view, Mr. Grotas, about mediation? I do. What? I think it's an excellent idea. Thank you. Okay, thanks very much. That concludes argument in this case. Counsel can go ahead and head on out of the meeting at this time.